1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   SCOTT SERIO,                            Case No. 16-cv-00438-JSC

8                  Plaintiff,              **ORDER REASSIGNING; REPORT AND**
                                           **RECOMMENDATION GRANTING**
9          v.                              **PLAINTIFF'S MOTION FOR DEFAULT**
                                           **JUDGMENT**
10  FAN FAIR INC.,
                                           Re: Dkt. No. 24
11                 Defendant.

12

13          Plaintiff Scott Serio sues Defendant Fan Fair Inc. under the Copyright Act, 17 U.S.C.

14  § 501, based on Defendant's unauthorized use, display, and reproduction of one of Plaintiff's

15  copyrighted photos.  (Dkt. No. 7.[1])  Defendant did not respond to the complaint, and the Clerk of

16  the Court entered default against it.  (Dkt. No. 20.)  Plaintiff now moves for default judgment

17  including an award of statutory damages, attorneys' fees and costs, post-judgment interest, and a

18  permanent injunction barring any future infringements of Plaintiff's right to his photo.  (Dkt. No.

19  24.)  Because Defendant has neither consented to nor declined the undersigned magistrate judge's

20  jurisdiction, the Clerk of the Court is ordered to REASSIGN this action to a district court judge.

21  Having carefully considered the Plaintiff's submissions, the Court RECOMMENDS that

22  Plaintiff's motion for default judgment be granted in the amount of $19,295.31, plus post-

23  judgment interest, and a permanent injunction.

24                                    **BACKGROUND**

25          Plaintiff is a professional photographer known for his horse-racing photography.  (Dkt. No.

26  7 at 2 ¶¶ 8-9.)  Through his business, Plaintiff creates and licenses his photographs for various

27  _____

28  [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
    ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

uses.  (*Id.* ¶ 8.)  In May 2015, Plaintiff took a photo of the Triple Crown winning horse American Pharaoh.  (*Id.* ¶ 9.)  Plaintiff is the exclusive owner of the copyright in and to his photo of American Pharaoh.  (*Id.* ¶ 10.)  Defendant operates an internet store through the eBay website, using the trade name "Marincountysports," where it sells various sports and celebrity memorabilia.  (*Id.* at 3 ¶ 14.)  Defendant is incorporated in Arizona.  (*Id.* at 1 ¶ 3.)  Plaintiff discovered that Defendant was publicly displaying and distributing unauthorized reproductions and derivatives of his copyrighted photo.  (*Id.* ¶ 16.)  In particular, Defendant reproduced the photo and offered it for sale on his online store.  (*Id.* ¶ 17; Dkt. No. 7-3 (Ex. C).)

Plaintiff filed suit on January 25, 2016.  After several failed attempts to locate and serve Defendant or its agent, Plaintiff finally served Defendant through the Arizona Corporation Commission ("ACC"); the ACC mailed the complaint and summons to Defendant's address on record on March 29, 2016 and again on April 14, 2016.  (Dkt. No. 18.)  Defendant did not answer or otherwise respond to the complaint.  Thus, Plaintiff moved for entry of default against Defendant (Dkt. No. 19), and the Clerk of the Court entered default on May 25, 2016.  (Dkt. No. 20.)  Plaintiff now moves the Court for entry of default judgment against Defendant.  (Dkt. No. 24.)

## DISCUSSION

After a defendant's default is entered, a court must take "the well-pleaded factual allegations" in the complaint "as true."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).  However, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Id.*  In addition, when considering a motion for default judgment, a "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  "To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."  *Id.*; *see also Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953 (N.D. Cal. 2012) (denying motion for default judgment on the ground that the plaintiff had not met its personal jurisdiction burden).

For the reasons discussed below, the Court finds that personal jurisdiction exists over

Defendant and recommends that the district court grant default judgment in Plaintiff's favor.

## I.      Service of Process

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Thus, initially, the Court must "assess the adequacy of the service of process on the party against whom default is requested." *Sanrio Co., Ltd. v. J.I.K. Accessories*, No. C-09-0440 EMC, 2012 WL 1366611, at *2 (N.D. Cal. Apr. 19, 2012) (internal citation and quotations marks omitted).  A corporation may be served in a judicial district of the United States "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(f).  Rule 4(e)(1) provides in turn that an individual may be served "by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).  In Arizona, where Defendant is incorporated, "[w]hen a domestic corporation does not have an officer or agent in this state upon whom legal service of process can be made, service upon such domestic corporation shall be effected by depositing two copies of the summons and of the pleading being served in the office of the Corporation Commission, which shall be deemed personal service on such corporation."  Ariz. R. Civ. P. 4.1(j).

Plaintiff made several attempts to serve Defendant's agent, Jeffrey Kranz, using the address on file with the Arizona Corporation Commission.  (Dkt. No. 16-1 ¶ 2.)  Plaintiff also attempted to serve Defendant at a New York address that appeared during Plaintiff's investigation. (*Id.* ¶ 3.)  Because Plaintiff was unable to serve Defendant at either of these addresses, he also filed the summons, complaint, and other required documents with the Arizona Corporation Commission, which in turn mailed the summons and complaint to Defendant's last known place of business address.  (Dkt. No. 19-1 ¶ 4.)  Under Arizona Rules of Civil Procedure 4.1(j), Plaintiff's

1   filing of documents with the Arizona Corporation Commission is deemed personal service on

2   Defendant.  Accordingly, Plaintiff properly served Defendant in this case.

3   **II.      Personal Jurisdiction**

4          Personal jurisdiction over a nonresident defendant is proper when the state's long-arm

5   statute permits it, and if the exercise of personal jurisdiction does not violate federal due process.

6   *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996).

7   California's long-arm jurisdictional statute is coextensive with federal due process requirements;

8   accordingly, "the jurisdictional analyses under state law and federal due process are the same."

9   *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800-01 (9th Cir. 2004).  Traditional

10  bases of personal jurisdiction include consenting to jurisdiction, personal service within the forum

11  state, or citizenship or domicile in the forum state.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S.

12  873, 880 (2011).  Absent one of these traditional bases of jurisdiction, the Due Process Clause

13  requires that the defendant have sufficient "minimum contacts" with the forum state that

14  "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

15  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted).  The two

16  recognized bases for exercising personal jurisdiction over a nonresident defendant are "general

17  jurisdiction" and "specific jurisdiction."  *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th

18  Cir. 1997).  The plaintiff bears the burden of demonstrating that the court has jurisdiction over the

19  defendant.  *See McNutt v. General Motors Acceptance Corp of Indiana*, 298 U.S. 178, 189 (1936).

20         **A.      General Jurisdiction**

21         General jurisdiction over a nonresident defendant exists when the defendant engages in

22  "continuous and systematic general business contacts" that "approximate physical presence in the

23  forum state."  *Schwarzenegger*, 374 F.3d at 801 (internal citations and quotation marks omitted).

24  The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of

25  general jurisdiction permits a defendant to be haled into court in the forum state to answer for any

26  of its activities anywhere in the world."  *Id.* at 801.  It is the plaintiff's burden to establish that the

27  defendant has continuous and systematic contacts within the forum state.  *See Rio Props., Inc. v.

28  Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

United States District Court
Northern District of California

1    Plaintiff has not provided facts sufficient for the Court to exercise general jurisdiction over

2    Defendant.  As alleged, Defendant's only connection to California is that its online eBay store,

3    "Marincountysports," is hosted on "the eBay website headquartered in this State and this Judicial

4    District."  (Dkt. No. 7 at 2 ¶ 5.)  This connection is insufficient for the Court to find that

5    Defendant's contacts "approximate physical presence" in California.  *Schwarzenegger*, 374 F.3d at

6    801; *see also CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1074 (9th Cir. 2011)

7    (finding no general jurisdiction where the defendant had no offices or staff in California, was not

8    registered to do business in the state, had no registered agent for service of process, and did not

9    pay state taxes).

10    **B.    Specific Jurisdiction**

11    A court may exercise specific personal jurisdiction over a nonresident defendant if: (1) the

12    nonresident defendant purposefully directs his activities at the forum or performs some act by

13    which he purposefully avails himself of the privilege of conducting activities in the forum, thereby

14    invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-

15    related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the

16    nonresident defendant is reasonable.  *Facebook, Inc.*, 868 F. Supp. 2d at 958 (citing

17    *Schwarzenegger*, 374 F.3d at 802).  The plaintiff has the burden of proving the first two prongs; if

18    it does so, the defendant must demonstrate that the court's exercise of personal jurisdiction would

19    be unreasonable.  *Id.*  "If any of the three requirements is not satisfied, jurisdiction in the forum

20    would deprive the defendant of due process of law."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

21    1155 (9th Cir. 2006) (internal citations and quotations omitted).

22    **1.    Purposeful Direction**

23    Under the first prong, a plaintiff must establish that the defendant "either purposefully

24    availed itself of the privilege of conducting activities in California, or purposefully directed its

25    activities toward California."  *Schwarzenegger*, 374 F.3d at 802.  A purposeful availment analysis

26    "is most often used in suits sounding in contract," while a purposeful direction analysis "is most

27    often used in suits sounding in tort."  *Id.*  "Copyright infringement is similar to intentional torts;

28    hence, the proper analytical framework in copyright infringement cases is purposeful direction."

United States District Court
Northern District of California

1    *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 879 (N.D. Cal. 2012); *see also Pebble*

2    *Beach*, 453 F.3d at 1155 ("Evidence of [purposeful] direction generally consists of action taking

3    place outside the forum that is directed at the forum.").

4           The Ninth Circuit uses the three-part test outlined in *Calder v. Jones*, 465 U.S. 783 (1984)

5    to evaluate purposeful direction.  To satisfy this test, a defendant "must have 1) committed an

6    intentional act, which was 2) expressly aimed at the forum state and 3) caused harm, the brunt of

7    which is suffered and which the defendant knows is likely to be suffered in the forum state."

8    *Pebble Beach*, 453 F.3d at 1156 (internal citations and quotations omitted).  "There is no

9    requirement that the defendant have any physical contacts with the forum."  *Brayton Purcell LLP*

10   *v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal citations and quotations

11   omitted).

12                              **a.      Intentional Act**

13          An intentional act refers to "an intent to perform an actual, physical act in the real world,

14   rather than an intent to accomplish a result or consequence of that act."  *Schwarzenegger*, 374 F.3d

15   at 806.  Plaintiff asserts that Defendant publicly displayed for sale, without Plaintiff's

16   authorization, reproductions of Plaintiff's photo on Defendant's eBay store.  (Dkt. No. 7 at 3 ¶¶

17   14-17.)  This intentional act satisfies the first prong of the *Calder* test.

18                              **b.      Expressly Aimed at the Forum State**

19          The second prong of the *Calder* test requires that the defendant expressly aimed its actions

20   at the forum state.  Defendant's continuous operation of its commercial eBay website is sufficient

21   to establish that it "expressly aimed" its conduct at California.  In cases "where the Internet site

22   actually belongs to and is operated by the defendant, the nature of the website has jurisdictional

23   significance because the website allows the defendant to maintain some ongoing contact with the

24   forum state (as well as every other state that can access the site)."  *Boschetto v. Hansing*, 539 F.3d

25   1011, 1018 (9th Cir. 2008) (citations omitted).[2]

26

27   ───────────────

28   [2] In *Boschetto*, the Ninth Circuit ruled that the sale of one car via eBay was insufficient to
     demonstrate minimum contacts to establish jurisdiction over a nonresident defendant in a breach
     of contract case.  539 F.3d at 1020.  In so holding, the court noted that "the eBay listing was not

United States District Court
Northern District of California

1    The district court's decision in *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal.

2    1999) is instructive here.  There, the defendant operated a website that sold goods, including

3    goods that incorporated the plaintiff's patent.  *Id.* at 1076.  The *Stomp* court concluded that the

4    defendant's commercial website was sufficient to establish the minimum contacts necessary to

5    exercise personal jurisdiction over it.  Specifically, the court found that by maintaining a

6    commercial website through which it marketed and sold goods, the defendant "reached out beyond

7    its home state of Connecticut to avail itself of the benefits of the California forum."  *Id.* at 1078

8    (citation omitted).  Further, the court noted, by advertising and offering its products for sale via the

9    Internet, the defendant placed its products into the stream of commerce intending that consumers

10   with Internet access, including California citizens, purchase the products.  *Id.*

11   Other courts, including ones in this District, have applied the logic of the *Stomp* court and

12   exercised personal jurisdiction where the defendant maintained and conducted business through a

13   website accessible to consumers in the forum state.  *See, e.g.*, *Regal Art & Gifts, Inc. v. Fusion

14   Prod., Ltd.*, No. 15-CV-04363-KAW, 2016 WL 454116, at *5 (N.D. Cal. Feb. 5, 2016) (applying

15   reasoning of *Stomp* and noting that, "[t]o find otherwise, would allow corporations whose websites

16   serve a national market to defeat jurisdiction in states where those websites generate substantial

17   profits from local consumers"); *Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at

18   *7 (N.D. Cal. Oct. 21, 2013) (finding that the defendant's website amounted to commercial

19   activity in the forum state because the defendant sold counterfeited bags to members in the forum

20   state); *Symantec Corp. v. Acronis, Inc.*, No. C 12-05331 SI, 2013 WL 496290, at *4 (N.D. Cal.

21   Feb. 7, 2013) (applying reasoning of *Stomp* and holding that the defendant's website is sufficient

22   to demonstrate purposeful direction despite the defendant's sparse facilitation of sales in the forum

23   state).

24   Here, as in *Stomp*, Defendant conducts business over the Internet by maintaining a

25   continuous online presence through its eBay store.  Defendant operates its store undoubtedly with

26

27   part of broader e-commerce activity; the listing temporarily advertised a good for sale and that
     listing closed once the item was sold, thereby extinguishing the Internet contact for this transaction

28   within the forum state (and every other forum)."  *Id.* at 1018.

the intent to make a profit. Given the commercial nature of Defendant's store, and the fact that it is accessible to the citizens of California, Defendant expressly aimed its conduct at California. Further, the Court takes judicial notice that Defendant is incorporated in Arizona, but operates as "Marincountysports" when there is no such county in Arizona though there is in the Northern District of California. Thus, Defendant's use of "Marincountysports" suggests a further connection to California.

### c.  Causing Harm Likely to Be Suffered in the Forum State

The third requirement of the *Calder* test is satisfied where the defendant has "caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Pebble Beach Co.*, 453 F.3d at 1156 (internal citations omitted). Here, it was foreseeable that Plaintiff would be harmed by Defendant's infringement of his copyright and, because Plaintiff resides in California, it was also foreseeable that some of this harm would be suffered by Plaintiff in California. *See Mavrix v. Brand Technologies, Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011); *Brayton*, 606 F.3d at 1131. This satisfies the third requirement of the *Calder* test.

In sum, the Court finds that the three-part *Calder* test is satisfied and thus Defendant purposefully directed its activities toward California.

### 2.  Claim Arises out of or Relates to Defendant's Forum-Related Activities

Under the second prong, the claim must relate to the defendant's forum-related activities. "[T]his requirement is met if, 'but for' a defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (citation omitted). If Defendant had not publicly displayed reproductions of Plaintiff's photo on its eBay store, Plaintiff would not have a copyright claim because he would not have suffered an injury that resulted out of the alleged tort. Plaintiff's claim is related to Defendant's forum-related activities. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

### 3.  Reasonableness

The third and final prong assesses the reasonableness of exercising jurisdiction over the defendant. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

1    Under the third prong, personal jurisdiction over a case must not offend "traditional notions of fair

2    play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  Therefore, it must be reasonable to

3    require the defendant to defend himself in the forum state.  *World-Wide Volkswagen Corp. v.*

4    *Woodson*, 444 U.S. 286, 292 (1980).

5             Seven factors are weighed to determine reasonableness, none of which are dispositive:

6                  1) the extent of the defendant's purposeful interjection into the
                   forum state's affairs; 2) the burden on the defendant; 3) conflicts
7                  of law between the forum and defendant's home jurisdiction; 4) the
                   forum's interest in adjudicating the dispute; 5) the most efficient
8                  judicial resolution of the dispute; 6) the plaintiff's interest in
                   convenient and effective relief; and 7) the existence of an alternative
9                  forum.

10   *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).  While the burden is on the

11   defendant to demonstrate that the exercise of personal jurisdiction would be unreasonable, *see*

12   *Schwarzenegger*, 374 F.3d at 802, Defendant has not appeared in this case.  The Court

13   nevertheless examines the seven factors below in light of the record before it.

14           The first factor depends on the same analysis that applies to purposeful direction.  *See*

15   *Roth*, 942 F.2d at 623.  For the reasons stated above, by maintaining a commercial website

16   through which Defendant marketed and sold goods, Defendant purposefully interjected himself

17   into California.  The first factor weighs in favor of a finding of reasonableness.

18           Under the second factor, "[t]he primary concern is for the defendant's burden."  *Fed.*

19   *Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) (internal citation

20   omitted).  However, "[u]nless such inconvenience [to the defendant] is so great as to constitute a

21   deprivation of due process, it will not overcome clear justifications for the exercise of

22   jurisdiction."  *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir.

23   1986) (internal citation omitted).  Although Defendant has not responded in this case, it is unlikely

24   that litigating in California, as opposed to Arizona, would amount to a deprivation of Defendant's

25   due process, particularly given Defendant's purposeful availment of the benefits of conducting

26   business within the forum.  This factor remains neutral.

27           The third factor—conflicts of law—favors a finding of reasonableness.  This factor is a

28   lesser barrier to reasonableness when the defendant resides in another state rather than in a foreign

United States District Court
Northern District of California

1   nation.  *See Roth*, 942 F.2d at 623; *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1330

2   (9th Cir. 1985) ("[W]hen the nonresident defendant is from a foreign nation, rather than from

3   another state in our federal system, the sovereignty barrier is higher, undermining the

4   reasonableness of personal jurisdiction.").  Further, there is no conflict of laws because federal

5   copyright law applies in both California and Arizona.  *See Goldberg v. Cameron*, 482 F. Supp. 2d

6   1136, 1146 (N.D. Cal. 2007) (finding personal jurisdiction in copyright case reasonable in part

7   because "[t]he law of the fora is the same").

8           The fourth factor weighs in favor of a finding of reasonableness because "[a] State

9   generally has a manifest interest in providing its residents with a convenient forum for redressing

10  injuries inflicted by out-of-state actors."  *Burger King*, 471 U.S. at 473 (internal quotation marks

11  omitted).  Here, since Plaintiff is a resident of California, California has an interest in providing

12  itself as a forum for resolving the current dispute.  *See Brackett v. Hilton Hotels Corp.*, 619 F.

13  Supp. 2d 810, 818 (N.D. Cal. 2008) (noting that "the Northern District has an interest in

14  adjudicating the copyright infringement claims of its residents").

15          The fifth factor, regarding efficient judicial resolution, focuses on the location of the

16  evidence and witnesses.  *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir.

17  1995) *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433

18  F.3d 1199 (9th Cir. 2006).  This factor is not weighed heavily given the modern advances in

19  communication and transportation.  *Id*.  This is particularly true here, where Plaintiff's claim arises

20  from the reproduction of Plaintiff's photo on a website.  This factor is neutral.

21          The sixth factor favors a finding of reasonableness because it will be more convenient for

22  Plaintiff to litigate the case in the same state where he resides.

23          The seventh factor weighs in Defendant's favor.  The test is not whether the current forum

24  state is more convenient for Plaintiff, but rather whether Plaintiff would be precluded from

25  adjudicating the dispute in a different forum.  *Roth*, 942 F.2d at 624-25.  There is no indication

26  that Plaintiff would be precluded from adjudicating in Arizona.

27          In determining the reasonableness of litigating this case in California, factors one, three,

28  four, and six favor Plaintiff.  Factors two and five are neutral, and only factor seven favors

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant and a finding against reasonableness.  On balance, it is reasonable to subject Defendant

2    to defend itself in California.

3            For the reasons stated above, the Northern District of California has specific jurisdiction

4    over Defendant.

5    **III.    Default Judgment**

6            After entry of default, a court may grant default judgment on the merits of the case.  *See*

7    Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a

8    discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Courts consider the

9    following factors in determining whether to enter default judgment:

10              1) the possibility of prejudice to the plaintiff; 2) the merits of
         plaintiff's substantive claim; 3) the sufficiency of the complaint; 4)
11       the sum of money at stake in the action; 5) the possibility of a
         dispute concerning material facts; 6) whether the default was due to
12       excusable neglect, and; 7) the strong policy underlying the Federal
         Rules of Civil Procedure favoring decisions on the merits.
13

14   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

15           Upon entry of default, the factual allegations of the complaint related to liability are

16   deemed to have been admitted by the non-defaulting party.  *See TeleVideo Sys., Inc. v. Heidenthal*,

17   826 F.2d 915, 917-18 (9th Cir. 1987).  Allegations regarding damages, however, are not deemed

18   admitted; to that end, the Court has the discretion to consider competent evidence and other papers

19   submitted with a motion for default judgment to determine damages.  *See Shanghai Automation*

20   *Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001) (citation omitted).

21           **A.    Prejudice to the Plaintiff**

22           The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default

23   judgment is not entered.  *See Craigslist*, 694 F. Supp. 2d at 1054.  If default judgment is not

24   entered here, Plaintiff would be unable to recover damages resulting from Defendant's

25   infringement.  This factor weighs in favor of default judgment.  *See, e.g.*, *IO Grp., Inc. v. Jordon*,

26   708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (finding prejudice weighed in favor of default

27   judgment where "[p]laintiff would be without recourse to stop [d]efendant's infringement or to

28   recover for the harm and damages [d]efendant has caused"); *Microsoft Corp. v. Ricketts*, No. C

1   06-06712 WHA, 2007 WL 1520965, at *3 (N.D. Cal. May 24, 2007) ("If this motion is not

2   granted, plaintiff will be left without a remedy or a means to prevent defendant's continued

3   infringement.").

4       **B.      The Merits of Plaintiff's Substantive Claim and the Sufficiency of the**
            **Complaint**

5

6           Under the second and third *Eitel* factors, the Court must examine whether Plaintiff pled

7   sufficient facts to establish and succeed upon his claim.  *See Craigslist*, 694 F. Supp. 2d at 1055.

8   Plaintiff states a claim for relief under 17 U.S.C. § 101 for direct copyright infringement.  (Dkt.

9   No. 7 at 3-4 ¶¶ 1-8.)  To prevail on a claim for copyright infringement, Plaintiff must show: (1)

10  ownership of a valid copyright; and (2) that Defendant copied protected elements of the

11  copyrighted work.  *See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).  Plaintiff has

12  demonstrated ownership of a valid copyright through his registration records with the United

13  States Copyright Office.  (Dkt. No. 7-2 (Ex. B).)  With regard to the second element, Plaintiff has

14  provided evidence that, after he registered his copyrighted work on July 2, 2015 (*see id.*),

15  Defendant—without Plaintiff's authorization— reproduced his photo and attempted to resell the

16  photo online through its eBay store.  (Dkt. No. 7-3 at 2 (Jan. 25, 2016 eBay listing).)  Based on

17  these allegations, Plaintiff has adequately pled a claim for direct copyright infringement.  Further,

18  taking these allegations as true, Plaintiff has demonstrated he is likely to succeed on this claim.

19      **C.      The Sum of Money at Stake in the Action**

20          The fourth *Eitel* factor examines the amount of money at stake in relation to the

21  seriousness of a defendant's conduct.  *See Craigslist*, 694 F. Supp. 2d at 1060.  "A district court

22  has wide discretion in determining the amount of statutory damages to be awarded and should

23  consider what is just in the particular case in light of the nature of the copyright, the circumstances

24  of the infringement, and other relevant circumstances."  *IO Grp., Inc.*, 708 F. Supp. 2d at 1002.

25  Plaintiff seeks maximum statutory damages of $150,000 and attorneys' fees of $13,505.31.  (Dkt.

26  No. 24-4 at 2.)  However, in its eBay listing, Defendant attempted to sell the copyrighted photo for

27  just $4.99 and a $3.75 shipping fee.  (Dkt. No. 7-3 at 2 (Ex. C.))  Furthermore, Plaintiff admits that

28  Defendant no longer lists the photo for sale on its eBay store.  (*See* Dkt. No. 24-1 at 4 ¶ 1.)  For

United States District Court
Northern District of California

12

this reason, it appears that the maximum statutory damages and attorneys' fees in relation to the seriousness of Defendant's conduct is imbalanced.  *See IO Grp., Inc.*, 708 F. Supp. 2d at 1003 (awarding the plaintiff a lower amount of statutory damages because the defendant immediately removed the copyrighted work from his website and there was no indication the defendant profited from the copyrighted work).  This factor does not weigh in favor of default judgment if Plaintiff receives maximum statutory damages and attorneys' fees.

### D.       The Possibility of a Dispute Concerning Material Facts

Since Defendant has not answered the complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown.

### E.       Whether the Default was Due to Excusable Neglect

Plaintiff properly served Defendant and there is no evidence in the record that Defendant's failure to appear and otherwise defend this action was the result of excusable neglect.  This factor favors entry of default judgment.

### F.       The Strong Policy Favoring Decisions on the Merits

The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment.  *See Eitel*, 782 F.2d at 1472.  In cases where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted.  *See Craigslist*, 694 F. Supp. 2d at 1061 (citation omitted).  Such is the case here.  This factor favors entry of default judgment.

In light of the above balancing of the *Eitel* factors, the Court finds that entry of default judgment is appropriate.  Accordingly, the Court recommends that the district court judge enter default judgment against Defendant.

## IV.     Remedies

Plaintiff requests that the Court award statutory damages, attorneys' fees and costs, post-judgment interest, and a permanent injunction enjoining further infringement.  The Court will evaluate each of Plaintiff's requests in turn.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

## A.    Statutory Damages

Generally, in assessing the appropriate amount of damages on a default judgment, the court does not presume the truth of any factual allegations related to the amount of damages. *TeleVideo Sys.*, 826 F.2d at 917-18.  Thus, the plaintiff is required to prove all damages sought in the complaint and the court must ensure that the amount of damages is reasonable and demonstrated by the evidence.  Fed. R. Civ. P. 55(b); Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys.*, 826 F.2d at 917-18.  In an action for copyright infringement, the copyright owner is entitled to recover the actual damages suffered and defendant's profits obtained as a result of the infringement.  *See* 17 U.S.C. § 504(a)(1).  In the alternative, and only at the election of the plaintiff, the court may award statutory damages of no less than $750 and up to $30,000 per copyright infringement.  *Id.* § 504(c)(1).  Where the copyright owner proves that the infringement was willful, the court has discretion to increase the award of statutory damages to a maximum amount of $150,000.  *Id.* § 504(c)(2).  In contrast, where the "court finds[ ] that [the] infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $200."  *Id.*

Here, Plaintiff requests a maximum award of statutory damages in the amount of $150,000.[3]  (Dkt. No. 24-1 at 7.)  This statutory maximum is predicated on Plaintiff's contention that Defendant's infringement was willful.  (*Id.*)  Specifically, Plaintiff contends that Defendant's behavior was intentional and reckless since Defendant listed the copyrighted work on its eBay website.  (*Id.* at 8.)

### 1.    Amount of Statutory Damages

"A district court has wide discretion in determining the amount of statutory damages to be awarded and should consider what is just . . . in light of the nature of the copyright, the circumstances of the infringement, and other relevant circumstances."  *IO Grp., Inc.*, 708 F. Supp. 2d at 1002.  To determine how much to award in statutory damages, the district court considers factors such as:  "(1) the expenses saved and the profits reaped; (2) the revenues lost by the

---

[3] Plaintiff is entitled to statutory damages because he timely registered his copyrighted works. (Dkt. No.1 ¶ 10.)

14

1    plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5)

2    whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated

3    in providing particular records from which to assess the value of the infringing material produced;

4    and (7) the potential for discouraging the defendant." *Io Grp. Inc. v. GLBT Ltd*., No. C-10-01282

5    MMC DMR, 2011 WL 3443773, at *3 (N.D. Cal. Aug. 8, 2011) (internal citation omitted).

6         In its eBay listing, Defendant attempted to sell the copyrighted photo for just $4.99 with a

7    $3.75 shipping fee (Dkt. No. 7-3 at 2 (Ex. C).), so the profits reaped by Defendant, if any, would

8    be minimal.  Plaintiff also admits that Defendant no longer lists the photo for sale on its eBay store

9    (*see* Dkt. No. 24-1 ¶ 1), so Defendant is currently not making any profit.  However, Plaintiff

10   argues that he lost valuable licensing fees, estimated at $2,000 or more, as a direct result of

11   Defendant's infringing activity.  The Court also recognizes that statutory damages have the

12   potential to both discourage the defendant from future infringing activity and deter others from

13   doing the same.  Thus, the Court recommends an award of $6,000 in statutory damages.  *See*

14   *Broad. Music, Inc. v. JMN Rest. Mgmt. Corp*., No. 14-CV-01190-JD, 2014 WL 5106421, at *3

15   (N.D. Cal. Oct. 10, 2014) (awarding statutory damages in an amount slightly more than three

16   times the license fees plaintiff would have recovered); *Broad. Music, Inc. v. Kiflit*, No. 12-CV-

17   00856-LHK, 2012 WL 4717852, at *4 (N.D. Cal. Oct. 2, 2012) (awarding statutory damages of

18   "slightly more than three times the cost of the estimated licensing fee").

19        **B.    Attorneys' Fees and Costs**

20        Next, Plaintiff seeks to recover attorneys' fees and costs under 17 U.S.C. § 505 in the

21   amount of $13,505.31.  (Dkt. No. 24-1 at 9.)  Section 505 of the Copyright Act provides that a

22   court "may" award reasonable attorneys' fees and costs to a prevailing party.  *Id.*  When deciding

23   whether to award attorneys' fees, courts consider, among other things: (1) the degree of success

24   obtained; (2) whether the lawsuit was frivolous; (3) motivation; (4) objective unreasonableness

25   (both in the factual and legal arguments in the case); and (5) the need in particular circumstances

26   to advance considerations of compensation and deterrence.  *Historical Research v. Cabral*, 80

27   F.3d 377, 379 n.1 (9th Cir. 1996) (citations omitted).  In addition, "willful infringement is an

28   important factor favoring an award of fees, [but] it does not, in itself, compel such an award."  *Id.*

United States District Court
Northern District of California

15

1    at 379 (citation omitted).  Nevertheless, a fee award does not require "exceptional circumstances"

2    or any similar finding.  *Id.* at 378.  Instead, district courts may "freely award fees, as long as they

3    treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's

4    objectives."  *Id.* at 378-79.  Plaintiffs that obtain default judgment are generally awarded

5    attorneys' fees and costs in the ordinary course.  *See, e.g.*, *Livingston v. Art.com, Inc.*, No. 13-CV-

6    03748-JSC, 2015 WL 4319851, at *11 (N.D. Cal. Apr. 17, 2015), *report and recommendation*

7    *adopted as modified*, No. 3:13-CV-03748-CRB, 2015 WL 4307808 (N.D. Cal. July 15, 2015);

8    *Broad. Music, Inc.*, 2014 WL 5106421 at *3; *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp.

9    2d 1083, 1094-96 (N.D. Cal. 2008).

10        Here, given that Plaintiff is entitled to default judgment on his copyright infringement

11   claim, the Court finds that reasonable attorneys' fees and costs are appropriate.  Having

12   determined that Plaintiff is eligible for reasonable attorneys' fees and costs, the remaining issue

13   before the Court is the amount that should be awarded.  Plaintiff requests $11,948.00 in attorneys'

14   fees and $1,557.31 in costs.  (Dkt. No. 24-3 ¶¶ 6-7.)

15            **1.      Attorneys' Fees**

16        A court assessing attorney fees "begins with a touchstone or lodestar figure, based on the

17   careful compilation of the time spent and reasonable hourly compensation of each attorney . . .

18   involved in the presentation of the case."  *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014,

19   1023 (N.D. Cal. 2010) (internal citation and quotation marks omitted).  "The 'lodestar' is

20   calculated by multiplying the number of hours the prevailing party reasonably expended on the

21   litigation by a reasonable hourly rate."  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.

22   1996).  In terms of the reasonable amount of time spent, the Court should only award fees based

23   on "the number of hours reasonably expended on the litigation" and should exclude "hours that are

24   excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433-34

25   (1983).  "There is no precise rule or formula for making these determinations [,]" and "[t]he court

26   necessarily has discretion in making this equitable judgment."  *Id.* at 436-37.  "Once the court has

27   fixed the lodestar, it may increase or decrease that amount by applying a positive or negative

28   'multiplier' to take into account a variety of other factors, including the quality of the

United States District Court
Northern District of California

16

1    representation, the novelty and complexity of the issues, the results obtained, and the contingent

2    risk presented." *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (2001) (internal

3    citations omitted).

4                    a.        **Reasonable Hourly Rate**

5            "The first step in the lodestar analysis requires the court to determine a reasonable hourly

6    rate for the fee applicant's services.  This determination involves examining the prevailing market

7    rates in the community charged for similar services by lawyers of reasonably comparable skill,

8    experience, and reputation." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1166 (N.D. Cal.

9    2012) (internal quotation marks and citations omitted).  The relevant community for the purposes

10   of determining the prevailing market rate is generally the "forum in which the district court sits."

11   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  "The fee applicant has the

12   burden of producing satisfactory evidence . . . that the requested rates are in line with those

13   prevailing in the community[.]" *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)

14   (internal citation omitted).  In addition to affidavits from the fee applicant himself, other evidence

15   of the prevailing market rate may include affidavits from other area attorneys or examples of rates

16   awarded to counsel in previous cases.  *See Cotton*, 889 F. Supp. 2d at 1166-67.  However, the

17   actual rate that the fee applicant charged is not evidence of the prevailing market rate.  *Id.*  (citing

18   *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)).

19           Here, Plaintiff asserts that the fee award should be based on a rate of $360 per hour for

20   attorney Brandon Leahy, $285 per hour for paralegal David Rollins, and $275 per hour for

21   research specialist Cate Nash.  (Dkt. No. 24-3 ¶¶ 9-12.)  Mr. Leahy, the lead associate on the case,

22   graduated from law school in 2012.  (*Id.* ¶ 9.)  The declaration does not indicate Mr. Leahy's

23   experience in copyright matters.  Steven Cowley, the supervising and billing attorney at Duane

24   Morris LLP, supervised all staff.  (*Id.* ¶ 4.)  Mr. Cowley has been practicing law for over 26 years

25   with focuses on intellectual property and complex commercial litigation.  (*Id.* ¶ 3.)  Mr. Cowley

26   contends that the rates are fair, equitable and reasonable based on his "careful review of each

27   entry."  (*Id.* ¶ 8.)

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1      While Plaintiff has not submitted any other evidence relating to the prevailing rates in this

2 District for attorneys' fees, the Court notes that other courts in this District have determined that

3 rates ranging from $225 to $600 are reasonable in the context of default judgments. *See, e.g.*,

4 *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1033 (N.D. Cal. 2015) (awarding attorneys' fees

5 of $418.50 per hour for three attorneys who worked on the case, noting that, based on data from

6 the American Intellectual Property Law Association, the average billing rate for IP attorneys in

7 San Francisco is $547 per hour); *Goldberg v. Cameron*, No. C-05-03534-RMW, 2011 WL

8 3515899, at *7-8 (N.D. Cal. Aug. 11, 2011) (awarding attorneys' fees ranging from $225 to $550

9 in copyright infringement entertainment case, but noting that some rates in this District range from

10 $600 to $900 per hour). Based on the fees awarded in comparable actions in this District and a

11 review of the billing records submitted by Plaintiff's counsel, the Court determines that the hourly

12 rates Plaintiff seeks for its attorneys are reasonable.

13      In regards to Plaintiff's request for paralegal and research specialist fees, courts in this

14 District have recently awarded fees for paralegals in the range of $75 through $250 per hour. *See,*

15 *e.g.*, *Yufa v. TSI Inc.*, No. 09-CV-01315-KAW, 2014 WL 4071902, at *6 (N.D. Cal. Aug. 14,

16 2014) (reducing paralegals' fees from $150 per hour to $75 per hour because no information was

17 provided regarding the paralegal's background or experience to justify the "high" hourly rate in a

18 patent infringement case); *Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Trust, Inc.*, No. 15-

19 CV-00216-DMR, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (awarding paralegals' fees

20 ranging from $225 to $250 per hour in a class action suit); *Moralez v. Whole Foods Mkt., Inc*., No.

21 C 12-01072 CRB, 2013 WL 3967639, at *3 (N.D. Cal. July 31, 2013) (awarding paralegals' fees

22 ranging from $135 to $175 per hour, finding $175 per hour to be a more reasonable rate than $200

23 per hour in a disability discrimination suit). Because Plaintiff's requested rates are higher than

24 those regularly awarded, and because Plaintiff has not provided any background or experience

25 information for Mr. Rollins and Ms. Nash justifying those higher rates, the Court determines that

26 $150 per hour is a reasonable rate for those two individuals.

27      Accordingly, the Court recommends that Plaintiff's request for fees should be awarded at

28 the rates of $360 per hour for attorneys and $150 per hour for paralegals and research specialists.

United States District Court
Northern District of California

### b.   Reasonableness of Time Spent

Over the nine-month span of this litigation, Plaintiff's counsel and supporting staff billed 33.7 hours.  (Dkt. No. 24-3 at 24.)  Mr. Leahy began by reviewing documents and communications with Mr. Cowley, his supervisor.  (*Id.* at 22.)  The record indicates that Mr. Leahy spent time conferring with Mr. Cowley and exchanging emails regarding effecting proper service to the Defendant, preparing the complaint and other court filings, and drafting the motion for default judgment.  (*Id.* at 22-24.)  Mr. Rollins, the paralegal, spent time researching defendant's operations and summarizing his findings.  (*Id.* at 22-23.)  Ms. Nash, the research specialist, conducted research on one occasion for 40 minutes.  (*Id.* at 22.)  The Court also takes into consideration the fact that Mr. Cowley, who bills at a discounted rate of $675 (*id.* ¶ 3), did not bill his time despite supervising the case.  Having reviewed the billing entries reflecting the time associated with each task, the Court finds that the number of hours the Duane Morris staff billed in this case is reasonable.  Accordingly, applying the hourly rates discussed above, the Court recommends awarding $11,738.00 in attorneys' fees to Plaintiff.

### C.   Costs

Additionally, Plaintiff seeks $1,557.31 in costs.  (Dkt. No. 24-3 ¶ 6.)  The costs are as follows: filing fee of $400, messenger service fee of $437.21, professional service fee of $95.50, LEXIS legal research fee of $323.70, and Westlaw legal research fee of $47.20.  (*Id.*)  These costs are the types of expenses generally awarded as reasonable.  *See Johnson v. Astrue*, No. C-07-2387 EMC, 2008 WL 3984599, at *2 (N.D. Cal. Aug. 27, 2008) (holding that time billed for legal research is reasonable.).  Thus, the Court recommends awarding $1,557.31 in costs.

### D.   Post-Judgment Interest

Plaintiff has also requested post-judgment interest.  Under 28 U.S.C. § 1961, the award of post-judgment interest is automatic and at the federal interest rate equal to the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ]the date of the judgment."  28 U.S.C. § 1961(a); *see also Barnard v. Theobald*, 649 F. App'x 414 (9th Cir. 2016).  Accordingly, the Court grants Plaintiff's request for post-judgment interest.

### E.    Injunctive Relief

Plaintiff urges the Court to enter a permanent injunction against Defendant enjoining it from continuing to create and distribute derivatives of Plaintiff's photo.  (Dkt. No. 24-1 at 10.) Plaintiff contends that such an injunction is necessary given that Defendant "may well continue to or again willfully infringe Plaintiff's copyright."  (*Id.*)  The Copyright Act authorizes the court to grant injunctive relief "as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  But "an injunction [does not] automatically follow a determination that a copyright has been infringed."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006).  Rather, "[a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable."  *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) (internal quotation marks and citation omitted).  If granted, an injunction must be narrowly tailored to remedy only the harms that the plaintiff specifically identifies, rather than to enjoin all possible breaches of the law.  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *see also Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006).  In determining whether to impose an injunction, the court must consider (1) whether the plaintiff has suffered irreparable injury; (2) whether the plaintiff can be adequately compensated by a remedy at law, such as monetary damages; (3) whether the balance of hardships between the plaintiff and defendant favors the plaintiff; and (4) whether the permanent injunction will serve the public.  *See eBay Inc.*, 547 U.S. at 391.

In light of the above factors, the Court finds that the circumstances here warrant an issuance of a permanent injunction.  The first factor, irreparable harm, may be shown where there is "[j]eopardy to a company's competitive position caused by copyright infringement," or where there is "the threat of the loss of prospective customers, goodwill, or reputation . . . ."  *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *8 (W.D. Wash. Jan. 31, 2014) (internal citation omitted).  Plaintiff suffered harm through the impaired market value of the American Pharoah photo since he "can no longer give an exclusive license for the photo as a print."  (Dkt. No. 24-2 ¶ 7.)

1    Second, monetary damages are inadequate compensation for Plaintiff's injury because

2    there is nothing stopping Defendant from selling the derivative copyrighted photos.  While

3    Defendant no longer lists derivatives of Plaintiff's photo on its eBay website (Dkt. No. 24-1 at 4

4    ¶ 1), there is no indication that Defendant will not sell Plaintiff's photo in the future.  *See Sanrio*

5    *Co.*, 2012 WL 1366611, at *5 (holding monetary damages were inadequate because defendant

6    could continue to infringe upon plaintiff's copyrights and sell inferior products).

7    The third factor—balance of hardship—weighs in favor of Plaintiff.  Plaintiff will be

8    harmed by any continued infringement on behalf of the Defendant.  Defendant's hardship only

9    requires it to comply with the Copyright Act.  *See Autodesk, Inc. v. Flores*, No. 10-CV-01917-

10   LHK, 2011 WL 337836, at *7 (N.D. Cal. Jan. 31, 2011) (holding that there was no potential harm

11   to the defendant because an injunction would require them to comply with the Copyright and

12   Lanham Acts).

13   Under the fourth factor, a permanent injunction is appropriate if it will serve the public.  A

14   permanent injunction will protect Plaintiff's copyrights against future infringement and the public

15   would not be disserved by Defendant no longer selling derivatives of Plaintiff's photos.  *See*

16   *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 859 (C.D. Cal. 2006), *aff'd in part, rev'd in part*

17   *and remanded sub nom. Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701 (9th Cir. 2007),

18   *amended and superseded on reh'g*, 508 F.3d 1146 (9th Cir. 2007), *and aff'd in part, rev'd in part*

19   *and remanded sub nom. Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007)

20   ("[T]he public interest is also served when the rights of copyright holders are protected against

21   acts likely constituting infringement."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd*., 518

22   F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (granting a permanent injunction because it would

23   protect plaintiff's copyrights against increased infringement).

24   Accordingly, the Court finds that injunctive relief is appropriate.

25                                              **CONCLUSION**

26   For the reasons stated above, the Court recommends that the district court judge GRANT

27   Plaintiff's motion for default judgment.  The Court further RECOMMENDS that Plaintiff be

28

awarded a total of $6,000 in statutory damages, $11,738.00 in attorneys' fees, and that Plaintiff's requests for post-judgment interest and a permanent injunction be granted in full.

Any party may file objections to this report and recommendation with the district court judge within fourteen days after being served with a copy. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's ultimate Order.

The Court ORDERS Plaintiff to serve a copy of this report and recommendation on Defendant.

**IT IS SO ORDERED.**

Dated: October 18, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

22